UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>JIM TRUE FORD MERCURY, INC. d/b/a JIM TRUE FORD, INC., JAMES E. TRUE Individually, FCN BANK NATIONAL ASSOCIATION d/b/a FCN BANK,<br><br>Defendants. | ) | No. 1:19-cv-04368-RLY-TAB |

**ORDER ON MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER, SECOND AMENDED COUNTERCLAIM, AND FIRST THIRD PARTY COMPLAINT**

## I. Introduction

Before the Court is a motion for leave to file a second amended answer, second amended counterclaim, and first third party complaint by Defendants Jim True Ford Mercury, Inc. d/b/a Jim True Ford, Inc. and James E. True. Defendants allege that since the entry of the Court's February 23, 2021, order on Plaintiff Ford Motor Credit Company LLC's motion to dismiss, "additional facts have been made known to the Counterclaim Plaintiffs by investigation of counsel that give rise to causes of action at the time of the filing of the Second Amended Counterclaim allowing for affirmative monetary recovery against Ford Credit." [Filing No. 155, at ECF p. 3.] Defendants predominately rely on claims of delays necessitated by the COVID-19 pandemic, as well as unsubstantiated claims of theft and interference by unknown third persons.

For reasons set forth in more detail below, Defendants' motion [Filing No. 155] is denied. Defendants do not set forth good cause for seeking these amendments almost 17 months after the Case Management Plan deadline for amending pleadings and almost six months after the Court's ruling on Plaintiff's motion to dismiss. Moreover, this litigation has been pending for almost two years. The Court recognizes the hardships faced by all parties due to the current landscape of the global pandemic and has freely granted leave for extensions of time as needed. However, consistent with Fed. R. Civ. P. 1, the Court and the parties are charged with securing the just, speedy, and inexpensive determination of this action. To allow additional amendments and claims at this stage would only further derail resolution of this matter. Thus, Defendants' motion is denied.

## II. Background

Ford Credit initiated its complaint against Defendants on October 28, 2019. [Filing No. 1.] On December 23, 2019, the True Defendants filed their answer and counterclaim. [Filing No. 37; Filing No. 38.] On January 13, 2020, Ford Credit filed its motion to dismiss Defendants' counterclaim. [Filing No. 40.] Defendants amended their counterclaim as a matter of right pursuant to Fed. R. Civ. P. 15. [Filing No. 65.] On March 27, 2020, Ford Credit moved to dismiss Defendants' first amended counterclaim. [Filing No. 67.] On May 13, 2020, Defendants also filed an amended answer adding additional affirmative defenses. [Filing No. 85.]

On February 23, 2021, following motions for extensions of time to file response and reply briefs and an unsuccessful attempt at settling the matter in a settlement conference with the undersigned magistrate judge, the Court entered its order on Ford Credit's motion to dismiss. [Filing No. 113.] The Court dismissed Defendants' counterclaims for: (1) breach of contract; (2) fraud, trickery, and conversion; (3) estoppel; (4) tortious interference with contracts; (5)

unconscionable contract; and (6) breach of fiduciary duty. [Filing No. 113.] However, the Court allowed Defendants' counterclaim to proceed for defamation based on a statement purportedly made by employee Bryan Banks.

Since the entry of the Court's dismissal order, the parties engaged in discovery and completed all liability discovery by the deadline, which the Court extended to September 13, 2021. [Filing No. 106.] On August 2, 2021, Defendants filed their motion seeking leave to file a second amended answer, second amended counterclaim, and first third party complaint, which now pends. [Filing No. 155.]

**III. Discussion**

Defendants' second amended counterclaim sets forth five new counts in addition to the claim for defamation, including: breach of peace, breach of contract, tortious interference with contractual relationships, and tortious interference with business relationships. [Filing No. 155-2.] In addition, Defendants seek to amend their answer to assert additional affirmative defenses "that arise from a more fulsome understanding of the operative facts" surrounding the underlying actions. [Filing No. 155-1.] Finally, Defendants seek to initiate a third-party action [Filing No. 155-2, at ECF p. 23] against "Doe Defendants" to preserve a cause of action and seek relevant discovery in relation to alleged home and electronic interference at Jim True's home and with his electronic devices. [Filing No. 155, at ECF p. 4.]

A motion for leave to amend a pleading is generally evaluated under Fed. R. Civ. P. 15(a)(2), which states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Generally, motions to amend pleadings are treated favorably under Rule 15's liberal amendment policy. *See id*. However, when a party seeks to amend the pleadings after the deadline set by the

court, "the district court is entitled to apply the heightened good-cause standard of Rule 16(b)(4), before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (internal citation and quotation marks omitted). In this case, the burden shifts to the moving party to show good cause for the belated amendments. *See, e.g.*, *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2011) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.' "). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

Defendants argue that while the last day cited in the Case Management Plan for amending proceedings was March 27, 2020, this date "has proven to be premature[.]" [Filing No. 155, at ECF p. 5.] In support, Defendants note that the Court did not rule on Plaintiff's motion to dismiss until February 23, 2021, and Defendants claim that additional facts were discovered during that time that had not been known prior to filing the amended counterclaim in December 2019. [Filing No. 155, at ECF p. 5.] However, Defendants do not otherwise explain why it took 17 months to investigate these allegedly new facts—all of which appear to date back to 2019—and file a motion for leave to amend.

Defendants' arguments are vague. Defendants claim, without further support, that "[m]any matters set forth in the Amended Counterclaim were unknown at the time of the filing of the Amended Counterclaim such as Ford Credit served as a lender to a new dealership that in November, 2019, therefore there was a motive to remove True Ford as a competitor of the new dealership." [Filing No. 155, at ECF p. 5.] Similarly, Defendants ambiguously claim that it was

"unknown until recently" that True Ford's books and records had been altered or unauthorized actions had been taken to establish new credit card accounts within the dealership. [Filing No. 155, at ECF p. 5.] Defendants provide no explanation for their extraordinary delay in seeking to file a third set of counterclaims nearly 17 months after the deadline to amend or otherwise explain why they could not have made these amendments sooner. Ford Credit disputes Defendants' claim that they could not have discovered these facts sooner, arguing that all of Defendants' new allegations could have been discovered months, if not years, ago. [Filing No. 163, at ECF p. 10.]

For instance, Defendants' proposed Second Amended Counterclaim alleges that Ford Credit was involved in negotiations to provide financing to another dealership under new ownership located near Jim True Ford and that Ford Credit forced Jim True Ford out of business to eliminate them as a competitor. These allegations rely on filings by the other dealership and Ford Credit's Financing Statement, all of which Ford Credit represents were publicly filed in 2019. [Filing No. 163, at ECF p. 10.] In addition, Jim True Ford has had exclusive control over its books and records since Jim True purchased the dealership in 2007, and Defendants provide no explanation for why their new allegations of books and records being altered or other unauthorized actions could not have been discovered and pleaded in their initial or amended counterclaims.

Defendants contend in their reply brief that counsel has faced unprecedent circumstances including a worldwide pandemic, criminal trespass into the client's home, and no access to client via phone or email. [Filing No. 165, at ECF p. 2.] While the pandemic has certainly altered the workplace, it has not stopped litigation from moving forward. Lawyers and the Court have

adjusted in this ever-changing landscape. The Court closed its doors to the public[1] and suspended jury trials, but found new, adaptive ways to make progress in pending matters. Civil and criminal proceedings are now frequently held telephonically or by video, rather than in person. The Court installed drop boxes at each courthouse in the Southern District of Indiana for paper filings, eliminating the need to visit the Clerk's Office. For matters that are proceeding in person, social distancing measures have been implemented in every courtroom, and masks are currently required (and readily provided) regardless of vaccination status. As trials have resumed, jury selection days have been staggered in order to minimize any risk to individuals asked to serve.

This is not meant to minimize the challenges faced by counsel, in this litigation and all pending matters, since March 2020. In recognition of this, the Court has freely granted reasonable motions for extensions of time or requests for accommodations as needed to address COVID-19 related concerns and delays. However, Defendants' motion simply does not set forth sufficient good cause related to the pandemic for allowing an extensive amendment to their answer and counterclaim this late in this litigation. Defendants have already filed two sets of counterclaims in this case and now seek another opportunity to amend only days before the extended discovery deadline. *See, e.g., Kuhn v. United Airlines, Inc.,* 640 Fed. App'x 534, 537

---

[1] Defendants' reply brief describes the brief of time from March 13, 2020, to April 5, 2021, as a "sequestration or hiatus." [Filing No. 165, at ECF p. 3.] Defendants argue that counsel was prevented from fully participating in this litigation as a result of an act of God. While the Courthouse doors may have been closed to the public during this time and jury trials were suspended, the Court never took a hiatus. As noted above, the Court found ways to adapt to the changing landscape and safely continue to resolve disputes, just like others did around the globe in all areas of life. Though litigating in the midst of a global pandemic has presented hardships, cases continued to progress, motions were resolved, discovery was conducted, and matters settled or were ruled on by the Court. While the pandemic has had a lasting impact on Court operations and litigation practice, the pandemic has not stopped litigation from moving forward. Counsel's characterization of a "hiatus" is grossly inaccurate.

(7th Cir. 2016) (affirming denial of leave to amend for failure to establish good cause when motion was filed "just days before the close of discovery"). Defendants simply have not set forth good cause for doing so.

Defendants also seek to initiate a third party action against Doe Defendants to preserve causes of action allegedly perpetrated by third persons "unknown at this time[.]" [Filing No. 155, at ECF p. 4.] Defendants ambiguously claim that their client has faced criminal trespass and tampering with electronic communications from unknown third persons. These arguments seem somewhat fanciful. While a suit against an unnamed, or "John Doe," defendant in federal court is a practice nether condoned nor condemned by the Federal Rules of Civil Procedure, the Seventh Circuit generally disfavors the practice. The Seventh Circuit has consistently noted that naming a John Doe defendant does not toll the statute of limitations. *See, e.g.*, *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978) ("We do not consider that the naming of a 'John Doe' defendant in the complaint tolls the statute of limitations until such time as a named defendant may be substituted. It constitutes a change of parties within Rule 15(c), and the newly named defendant sought to be substituted for 'John Doe' becomes a new party."). See also *Herrera v. Cleveland*, __ F.4th __, __, 2021 WL 3447681, at *4 (7th Cir. Aug. 6, 2021) ("[N]aming a John Doe defendant does not constitute a 'mistake' within the meaning of Rule 15(c)(1)(C)(ii)."). These reasons further weigh against Defendants' request for leave to amend and initiate a third party complaint almost two years after this lawsuit was filed against an unknown defendant.

Finally, even if Defendants could satisfy the good cause standard, their motion would still fail due to undue delay, as noted, and undue prejudice. *See, e.g.*, *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) ("Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment[.]" (Internal citation, quotation marks, and emphasis omitted)). In addition to failing to establish their diligence during this time of significant delay, granting leave to amend would unduly prejudice Ford Credit. Despite the parties' disagreements about discovery, written discovery is nearly complete, and depositions are expected to be completed in the coming weeks. Allowing Defendants to amend would widen the scope of potential issues and topics for the depositions and assuredly require additional discovery, which would further delay resolution of this matter and increase costs. Accordingly, Defendants' motion for second amended answer, second amended counterclaim, and first third party complaint is denied.[2] [Filing No. 155.]

[2] As the Court has concluded that Defendants failed to set forth good cause to allow Defendants to amend and that granting leave to amend is improper due to undue delay and undue prejudice, the Court does not address Ford Credit's arguments regarding futility.

## IV. Conclusion

Defendants have already had an opportunity amend their counterclaims, and filed this motion requesting leave to file a third set of counterclaims nearly 17 months after the deadline to amend the pleadings. Defendants have not established good cause for the Court to grant their belated motion. "A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). The Court's goal is to bring this case to a resolution, not extend or prolong it. The best way to do that is not to expand the claims nearly two years after litigation began, based on facts that appear to pre-date the initial cause of action and could have been discovered sooner. Accordingly, Defendants' motion [Filing No. 155] is denied.

Date: 9/9/2021

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email